UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MITCHELL D. STUBBS, | ) | CASE NO. 3:09CV1024 |
|  | ) |  |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
|  | ) |  |
| -vs- | ) |  |
|  | ) |  |
| J. T. SHARTLE, | ) | MEMORANDUM OF OPINION |
|  | ) | AND ORDER |
| Respondent. | ) |  |

Before the court is pro se petitioner Michael Stubbs's petition for preliminary injunction and temporary restraining order pursuant to 28 U.S.C. § 2241. Petitioner, who is currently incarcerated at the Federal Correctional Institution in Elkton, Ohio ("F.C.I. Elkton"), seeks immediate release from administrative detention/segregation to the general prison population, home confinement or to a half-way house. In addition, he seeks monetary relief in the amount of $1000.00 for each day he has been held in segregation beyond March 27, 2009.

The court has reviewed the petition and the memorandum in support of Mr. Stubbs's requests. For the reasons outlined below, petitioner's application for a TRO is denied and this matter

is dismissed without prejudice to any civil rights action petitioner may pursue.

## BACKGROUND

The Special Investigative Service (SIS) completed an investigation of Mr. Stubbs at F.C.I. Elkton on March 26, 2009. No incident report was issued as a result of the investigation. Petitioner was one of seven individuals under investigation. Three were returned to the general prison population and three are awaiting transfer to other prisons. Mr. Stubbs complains he is the only one who is still being held without any explanation.

He states he "went out on writ March 20, 2009 and returned on April 14, 2009." (Pet. at 2.) Under Administrative Remedy ID# 528394 and #528396 petitioner challenged his administrative detention, "among other things." After receiving a response on April 16, 2009, Mr. Stubbs requested forms to appeal to the Northeast Regional Office. He claims Counselor C. Crissman refused to give him the forms. Undeterred, petitioner secured the forms from another counselor.

On April 24, 2009, Mr. Stubbs gave his case manager a BP-11 form, with attachments. He requested on each that Unit Manager Jason Streuval prepare a memorandum, pursuant to BOP Program Statement 1330.13, notifying the Northeast Regional Director that his appeal was delayed because he was on writ March 20, 2009- April 14, 2009. As of the date petitioner filed this petition, his unit manager had not provided the memorandum. Petitioner claims he sent an Inmate Request to Staff "and otherwise" to the Northeast Regional Director D. Scott Dodrill on April 24, 2009 as well as on April 28, 2009. A similar request was sent to Regional Counsel Henry J. Sadowski on April 27, 2009.

Mr. Stubbs argues that the employees at F.C.I. Elkton are willfully violating his

First Amendment right to file a grievance by not giving him the required number of copies and forms in a timely manner. He believes one remedy would be to place him in a half-way house or home confinement for 12 months pursuant to 18 U.S.C. § 3624. In the alternative, he seeks $1,000.00 for each day he is held in administrative segregation beyond March 27, 2009.

## TEMPORARY RESTRAINING ORDER

In the Sixth Circuit, "the purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 227 (6th Cir.1996). Where prison management is concerned, however, the status quo is to allow the BOP to manage its facilities and the prisoners incarcerated there. A restraining order disturbs the status quo and encroaches on the BOP's discretion. See e.g. In the Matter of Providence Journal Company, 820 F.2d 1342, modified on reh'g by 820 F.2d 1354 (1st Cir.1986), cert. granted and dismissed on other grounds, United States v. Providence Journal Co., 485 U.S. 693 (1988)(effect of TRO on prior restraint). A prisoner is not automatically foreclosed from seeking relief under Rule 65; therefore, the court must apply its standard analysis to determine whether a TRO should issue.

The following four factors must be reviewed to determine if a TRO is warranted in this context: (1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir.1985); Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir.1977). The test is a flexible one and the factors are not prerequisites to be met, but must be balanced. Mason County, 563 F.2d at 1229. In balancing the four considerations applicable to TRO

decisions, the court finds equitable relief is not warranted.

a.      Likelihood of Success

With regard to the likelihood of success of the underlying petition, Mr. Stubbs has not set forth a compelling argument. Clearly he is alleging federal agents deprived him of a right secured by the federal Constitution. Complaints asserting an injury of a claimant's civil rights by a federal employee must be brought as a <u>Bivens</u> action. See <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 397 (1971). The federal government is not subject to suit under § 1983, <u>Ana Leon T. v. Fed. Reserve Bank</u>, 823 F.2d 928, 931 (6th Cir.1987), and § 2241 is a vehicle not for challenging prison conditions, but for challenging matters concerning the execution of a sentence such as the computation of good-time credits. See <u>Cohen v. United States</u>, 593 F.2d 766, 770-71 (6th Cir.1979).

Mr. Stubbs maintains that the respondent is violating his First Amendment right by thwarting his attempts to exhaust his administrative remedies and holding him in administrative confinement without formal charges. These issues, as well as his request for monetary damages, must be brought as a civil rights claim. These types of claims may not be brought under 28 U.S.C. § 2241, which is reserved for challenges to the execution of a sentence, such as the computation of parole or sentence credits, and may not be used to challenge the validity of a conviction or the conditions of a prisoner's confinement. See <u>Id</u>.;<u>Velasco v. Lamanna</u>, No. 00-4139, 2001 WL 861731 at *2 (6th Cir. June 20, 2001))("a § 2241 habeas petition is not the appropriate vehicle for challenging the conditions of ... confinement"); <u>Okoro v. Scibana</u>, No. 99-1322, 1999 WL 1252871, at *2 (6th Cir. Mar.25, 1999)(conditions of confinement claim not the type of claim that should be brought in a habeas corpus petition, which is designed to test the legality or duration of

4

confinement). Considering the nature of petitioner's claim, he has failed to state a claim for relief. Therefore, petitioner has failed to maintain the likelihood that his civil rights claims would be successful.

In passing, Mr. Stubbs also suggests he may be entitled to be released to a community corrections center (C.C.C.) or home confinement pursuant to 18 U.S.C. § 3624(c). This statute provides, in part:

> (1) In general. --The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

18 U.S.C. § 3624(c)(1)(2). While this is an issue over which the district court has jurisdiction pursuant to § 2241, this court declines to exercise its jurisdiction until the issue is ripe for adjudication.

CCCs and other similar facilities, unlike standard forms of incarceration, are part of the correctional process that focuses on reintegrating an inmate into society. The relevant statute specifically provides that an inmate should be placed in a CCC or similar institution at the end of a prison sentence to "afford the prisoner a reasonable opportunity to adjust to and prepare for ... re-entry into the community." 18 U.S.C. § 3624. At the time the petitioner initiated this case,

however, there was no indication the BOP made a formal recommendation regarding his placement in a C.C.C. According to the United States Supreme Court, the ripeness doctrine, under which a court may refuse to exercise its jurisdiction, originates from both constitutional limitations and prudential considerations. Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807 (2003). "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." Metzenbaum v. Fed. Energy Regulatory Comm'n, 675 F.2d 1282, 1289-1290 (C.A.D.C.1982) (citations omitted). The basic rationale of ripeness is:

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two fold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967) (overruled on other grounds). Under the ripeness doctrine, Mr. Stubbs's claim is premature. Without a determination from the respondent, this court is not in a position to determine whether petitioner is either eligible or entitled to be released to a half-way house or home confinement. His request for release, therefore, is dismissed without prejudice as a premature claim.

b.      Irreparable Injury

The injury of which Mr. Stubbs complains is restricted to the fact that he is no longer in the general prison population. Again, this is not a justiciable injury under § 2241. By his own

admission, the term of his confinement has not expired. He makes no showing that his confinement is atypical and a significant hardship, when compared with other similarly situated inmates. Thus, this is not an issue involving a prisoner being held beyond a prison term imposed by the court. See 28 U.S.C. § 2241 ("in custody in violation of the Constitution or laws or treaties of the United States.") Petitioner has not, therefore, suffered a justiciable injury-in-fact for habeas corpus purposes.

c. Harm to Others

Mr. Stubbs provides no legal or factual argument regarding the adverse effect his request would have on others. From this court's perspective, ordering the BOP to release petitioner from administrative segregation would contravene 18 U.S.C. § 3663 and undermine the BOP's authority as the ultimate arbiter with regard to prison management. See 18 U.S.C. § 3621. Thus, the adverse effect would recommend against granting petitioner's TRO.

d. Public Interest Served

Again, petitioner fails to raise a legitimate argument to support his motion for a TRO. While he clearly believes his petition has merit, it is not in the public interest to presume that releasing him to the general prison population warrants an order of restraint from this court.

CONCLUSION

Based on the foregoing, petitioner's Motion to Proceed In Forma Pauperis is granted, and his motion for temporary restraining order is DENIED. Moreover, because petitioner's allegations of a civil rights violation fail to state a claim for relief under 28 U.S.C. §2241, the petition is **dismissed** pursuant to 28 U.S.C. § 2243, but without prejudice to any future Bivens action petitioner may file or any future § 2241 petition, if Mr. Stubbs believes he has formally been denied

C.C.C. placement in violation of the statute. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

       IT IS SO ORDERED.


Dated: June 23, 2009                              *s/    James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE